IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**GABRIELE EAGON,**        Case 3:14 CV 2342

    Plaintiff,

    v.        Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.        MEMORANDUM OPINION AND ORDER

### INTRODUCTION

On October 21, 2014, Plaintiff Gabriele Eagon ("Plaintiff") filed a complaint against Carolyn W. Colvin, in her capacity as Commissioner of Social Security, seeking judicial review of the Commissioner's decision to deny Disability Insurance Benefits ("DIB"). (Doc. 1). This Court has jurisdiction under 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 12). For the following reasons, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

Plaintiff protectively filed for DIB on January 4, 2012. (Tr. 52). She alleged a disability onset date of January 7, 2003 (Tr. 52), and a date last insured ("DLI") of December 31, 2007 (Tr. 52). She applied for benefits due to the following illnesses, injuries, or conditions: chronic joint pain, degenerative disc disease, facet arthritis, and chronic inflammatory demyelinating polyneuropathy ("CIDP"). (Tr. 52). Social Security denied Plaintiff's claim initially (Tr. 52-63) and upon reconsideration (Tr. 65-77). On November 12, 2012, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 88).

The ALJ conducted a hearing on June 13, 2013, where Plaintiff and a Vocational Expert ("VE") testified. (Tr. 90). Plaintiff testified that from 2003 to 2007 she experienced leg and back pain, leg weakness, and occasional numbness in her feet and hands. (Tr. 35). She also testified that during this time period she had difficulty walking and standing for long periods of time, which frequently resulted in her having to lie down during the day for a couple hours at a time. (Tr. 35). She experienced stiffness while sitting and had to get up after an hour to move around. (Tr. 35). Plaintiff testified she used a cane on and off during this time period because of difficulty with her balance. (Tr. 35). She stated she had pain in her feet, and difficulty holding on to things because of pain in her hands. (Tr. 35). Plaintiff required assistance completing some household chores, but was able to cook with the use of a stool. (Tr. 39). She estimated she was only able to lift ten pounds. (Tr. 38). During this period, she received multiple steroid injections which alleviated her pain for six months. (Tr. 38). Plaintiff testified that once or twice a week she experienced generalized weakness and body aches. (Tr. 39). On those days, she spent her time sleeping and reading. (Tr. 39).

The VE also testified at this hearing. She reviewed the vocational exhibits, listened to the testimony, and ultimately opined Plaintiff's past relevant work fell into four general categories: waitress, manager (retail), data entry clerk, and job development specialist. (Tr. 48-49). These four categories can all be performed at a range of work from sedentary to light. (Tr. 48-49). The ALJ then asked if a hypothetical person of Plaintiff's age, education, and work experience could perform Plaintiff's past work if the person could lift and carry ten pounds occasionally and ten pounds frequently; sit with normal breaks for a total of eight hours a day; stand and walk with normal breaks for a total of two out of eight hours a day; stand and walk for up to fifteen minutes at a time; push and pull within the same limitations, but only occasionally operate foot controls

2

with the right leg; frequently handle and finger with the left upper extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; but should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation as well as exposure to hazards such as unprotected heights and dangerous machinery. (Tr. 49). The VE opined the hypothetical person would be able to perform two of Plaintiff's past jobs: data entry clerk and job development specialist. (Tr. 49-50). Even though Plaintiff described these as light work, the Dictionary of Occupational Titles defines them as sedentary work. (Tr. 48-50); DOT, Data Entry Clerk 203.582-054 (4d. Revised 1991). The VE testified that if the hypothetical person missed at least two or three days of work a month due to her combined impairments and resulting symptoms, she could not perform these jobs or any other jobs. (Tr. 50).

On July 19, 2013, the ALJ issued an unfavorable Notice of Decision. (Tr. 12). He found Plaintiff had severe impairments of right knee osteoarthritis status post lateral and medial meniscal tears, degenerative changes of the lumbar spine, small posterior disc bulges at T6-T7 and T7-T8, osteopenia of the left hip, psoriatic arthritis, status post thyroidectomy, and chronic obstructive pulmonary disease ("COPD"). (Tr. 17). The ALJ held Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. (Tr. 18).

In regard to Plaintiff's residual functional capacity ("RFC"), the ALJ found she could perform sedentary work with limitations. (Tr. 19). He found Plaintiff could lift and carry ten pounds occasionally, sit with normal breaks for a total of eight hours per day, and stand and walk with normal breaks for a total of two of eight hours per day, but could stand and walk for up to fifteen minutes at a time. (Tr. 19). Additionally, the ALJ determined the Plaintiff could push and

pull within those limitations, but could only occasionally operate foot controls with the right leg. (Tr. 19). The ALJ limited Plaintiff to frequent handling and fingering with the left upper extremity. (Tr. 19). He opined she could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. (Tr. 19). She could also occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 19). The ALJ found Plaintiff had to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and exposure to hazards, such as unprotected heights and dangerous machinery. (Tr. 19).

The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 6); 20 CFR §§ 404.955, 404.981. Plaintiff filed this action on October 21, 2014. (Doc. 1).

## FACTUAL AND MEDICAL BACKGROUND

*Personal Background*

Plaintiff was born on July 17, 1952. (Tr. 136). At the time she filed her application for disability benefits, Plaintiff was a 59 year old woman with an associate's degree in microcomputer business. (Tr. 52, 286).[1] She lived with her husband and son. (Tr. 40). The record revealed she had past work experience as an data entry clerk, administrative associate, financial aid and records specialist, job development specialist, retail store owner, and waitress. (Tr. 151, 267-74). She last worked in 2003 as an owner of an antique shop and then as a waitress. (Tr. 42-43, 45). Plaintiff testified her condition worsened in 2009 when she was diagnosed with neuropathy and CIDP. (Tr. 45-46).

---

1. Plaintiff was 50 years old on her alleged onset date of January 7, 2003, and 55 years old on December 31, 2007, her DLI. (Tr. 52).

*Relevant Medical Evidence[2]*

The Plaintiff's medical history between 2003 and 2007 reveals evidence solely of physical complaints and treatment; mostly of knee and back pain.[3] Plaintiff's complaints of low back pain began in June 2003, when she presented to the emergency room for treatment. (Tr. 368). An examination revealed paravertebral tenderness at L5 and a somewhat limited range of spine motion. (Tr. 368). Doctors treated Plaintiff with anti-inflammatory medication and a muscle relaxant and recommended ice and heat treatment. (Tr. 368).

In October 2003, Doug Hosey, D.C., completed an initial examination/evaluation report regarding Plaintiff's chiropractic treatment. (Tr. 318). Plaintiff had a positive Kemp's test bilaterally, positive Goldthwait's test (both lumbosacral and sacroiliac), severe lumbar tenderness, lumbar paravertebral rigidity, severe lumbar paravertebral spasm, severe lumbar paravertebral edema, and poor lumbar paravertebral strength. (Tr. 319-20). Dr. Hosey diagnosed Plaintiff with lumbar intervertebral disc syndrome, disc degeneration (lumbar), radiculitis (lumbar), and uneven leg length. (Tr. 320). Plaintiff attended regular chiropractic appointments with Dr. Hosey in October and November 2003 for treatment of her low back pain. (Tr. 318-30).

A MRI of Plaintiff's lumbar spine taken in December 2003 revealed small disc bulges at multiple levels and mild canal stenosis at L3-4 and L4-5. (Tr. 369). A few months later, in February 2004, Plaintiff presented to Dr. Sean Logan for an evaluation. (Tr. 526). She complained of lumbar pain with associated right leg and knee pain. (Tr. 526). Dr. Logan opined

---

2. Plaintiff submitted additional medical evidence from after her DLI into the record for review. There is further discussion of the relevance of such below.
3. The ALJ relied on the findings of state agency psychological consultants in determining Plaintiff had no severe medically determinable mental health impairments through her DLI. (Tr. 13). The record supports this determination and no further discussion is warranted.

her pain resulted from chronic myofascial back pain and referred her for further evaluation of her knee pain. (Tr. 527).

In early 2004 Dr. Tremains from Northwest Ohio Orthopedics and Sports Medicine, Inc. wrote a letter describing treatment of Plaintiff's right knee pain. (Tr. 335). Plaintiff complained of painful popping and catching and occasional swelling. (Tr. 335). An examination of the right knee revealed mild effusion, positive squat test, medial joint line tenderness, positive patellar grind, positive inhibition with tilt to a neutral position, and a mildly antalgic gait. (Tr. 335). X-rays of the right knee revealed medial compartment arthritis. (Tr. 335). Dr. Tremains diagnosed Plaintiff with medial compartment arthritis, chondromalacia patella, and a possible medial meniscus tear. (Tr. 335). He recommended a MRI for further evaluation. (Tr. 335). A MRI of the right knee revealed complex degenerative tears of the medial and lateral meniscuses, chondromalacia of the medial compartment, osteoarthritic change throughout the medial compartment, and a Baker's cyst. (Tr. 336). Dr. Tremains further diagnosed Plaintiff with right knee osteoarthritis, and medial and lateral meniscal tears. (Tr. 334). He treated Plaintiff with an injection and recommended Plaintiff use a walking cane for long distances. (Tr. 334). At this time the record reveals Plaintiff was preparing for international travel. (Tr. 334).

The following month, in April 2004, Plaintiff underwent a right knee arthroscopy with chondral debridement in the trochlear groove and partial medial and lateral meniscectomies. (Tr. 515-16). At a follow-up appointment two weeks after the surgery, Plaintiff had full range of motion, minimal pain, and no significant calf tenderness. (Tr. 333). At a six week follow-up appointment, Plaintiff had some achy stiff pain, but was slowly improving. (Tr. 332). She had a full range of motion with negative squat test, small Baker's cyst, and mild tenderness. (Tr. 332).

Plaintiff returned to the emergency room with complaints of low back pain in September 2004. (Tr. 366). An examination revealed nonspecific tenderness of the lumbar spine, and right paralumbar musculoskeletal tightness and spasm. (Tr. 366). The same month a MRI of Plaintiff's lumbar spine revealed mild to moderate spinal canal stenosis at L2-3, L3-4, and L4-5. (Tr. 371).

In October 2004, Dr. Lakshmipathy treated Plaintiff for complaints of severe bilateral lower back pain and leg pain, more severe on the left side than the right side. (Tr. 405). Dr. Lakshmipathy recommended a prescription for neurogenic pain medication and diagnostic facet injections at L4-5 and L5-S1. (Tr. 405). Twice in May 2005, Plaintiff presented to the emergency room for treatment of low back pain. (Tr. 359-65). On both occasions doctors treated her with intravenous pain medication. (Tr. 359-65). The same month, a MRI of the Plaintiff's lumbar spine showed no changes from a prior MRI. (Tr. 372). There were no new disc bulges or herniation, and no direct nerve root impingement on any of the right-sided nerve roots. (Tr. 372-73).

At the end of May 2005, Plaintiff presented to Dr. Bakos for treatment of her chronic low back pain with radiation to her right thigh and groin. (Tr. 389). Dr. Bakos performed a physical examination and opined Plaintiff demonstrated positive facet loading maneuvers, especially with extension and right lateral bending, and decreased pinprick sensation in the L4-5 distribution on the right. (Tr. 389). Plaintiff's motor strength and reflexes appeared to be intact throughout. (Tr. 389). She agreed to proceed with a facet injection and a lumbar epidural steroid injection. (Tr. 389). Dr. Bakos also prescribed neuropathic pain medication. (Tr. 389).

In July 2005, Dr. Bakos examined Plaintiff and noted she had numbness and allodynia to pinprick in her upper right leg, but the examination was otherwise within normal limits. (Tr.

393). Dr. Bakos recommended a femoral nerve block and continued a prescription for pain medication. (Tr. 393).

Plaintiff returned to Dr. Bakos in December 2005, and reported doing fairly well since the injections with the exception of some new pain in the thoracic region. (Tr. 394). Dr. Bakos ordered a thoracic spine MRI (Tr. 394), which revealed small disc bulges at T6-7 and T7-8, but no evidence of canal stenosis or neural foraminal narrowing (Tr. 374). He later administered a thoracic epidural steroid injection at T7-8. (Tr. 836). Plaintiff followed up with Dr. Bakos the following month and reported decreased back pain since the injection. (Tr. 395). She complained of some tingling in fingers on her right hand. (Tr. 395). Dr. Bakos prescribed narcotic and neuropathic pain medication and a trial TENS unit. (Tr. 395). He also suggested stretching exercises to reduce the pain. (Tr. 395).

In February 2006, Plaintiff presented to Dr. Jeffery McMath for treatment of painful left trigger thumb and received an injection. (Tr. 460). Later that month she returned to Dr. Bakos for follow-up and complained of pain in both knees. (Tr. 396). Dr. Bakos noted she had no deterioration with activities of daily living compared to her last visit and, in fact, had improved sleep while using the TENS unit. (Tr. 396).

Plaintiff underwent bilateral L4-5 and L5-S1 lumbar facet injections in March 2006 (Tr. 398), and again in April 2006 at L3-4, L4-5, and L5-S1 (Tr. 832). She reported excellent relief and pain of only one to two on a ten point scale. (Tr. 399). She walked easier and decreased her consumption of pain medication. (Tr. 399). Dr. Bakos opined Plaintiff had a very good response to diagnostic injections. (Tr. 399). He noted she demonstrated decreased stiffness and guarding, and an almost normal gait without any antalgic features. (Tr. 399).

Plaintiff underwent a caudal epidural steroid injection in June 2006. (Tr. 400). The same month a bone density study revealed osteopenia of the left hip with an increased fracture risk. (Tr. 401). In the middle of June she returned to Dr. Bakos with complaints of increased low back pain radiating down her left leg. (Tr. 454). Gait testing revealed no focal weakness or difficulty. (Tr. 454). Dr. Bakos opined she suffered from an aggravation of chronic pain and recommended a series of caudal epidural steroid injections in addition to a prescription for neuropathic pain medication. (Tr. 454). Plaintiff again underwent caudal epidural steroid injections in June and July 2006. (Tr. 400, 902). During a follow-up appointment with Dr. Bakos, Plaintiff expressed satisfaction with the results of the injections and remarked she was able to do more since the injections. (Tr. 419). Her pain was almost absent at rest and only noticeable with increased standing, walking, and transitioning. (Tr. 419).

In late August and early September of 2006, Plaintiff underwent a sleep study which revealed severe obstructive sleep apnea, moderate periodic limb movements in sleep, and inadequate sleep hygiene due to caffeine and nicotine. (Tr. 749-52). Dr. Atwell recommended behavioral therapy consisting of weight reduction, caffeine education and nicotine cessation, and the use of a CPAP device. (Tr. 752).

Plaintiff presented to Dr. Bakos in March 2007 with chronic low back pain with radiation to the gluteal area and bilateral knee pain. (Tr. 420). An examination revealed palpation tenderness and mild stiffness in the lumbosacral area, and an antalgic gait. (Tr. 420). Dr. Bakos noted both knees showed osteoarthritic changes and crepitus to palpation. (Tr. 420). Plaintiff received knee injections, which provided her with very good relief. (Tr. 420).

In August 2007, Plaintiff underwent a series of x-rays. An x-ray of Plaintiff's lumbar spine revealed degenerative changes, especially at L1-2 and L2-3. (Tr. 447). X-rays of Plaintiff's

bilateral feet showed mild degenerative changes and small plantar spurs. (Tr. 446). Hand x-rays revealed mild degenerative changes and a possible small cyst in a finger on her left hand. (Tr. 445). There was no definite evidence of psoriatic arthropathy. (Tr. 445).

Plaintiff presented additional medical evidence dated after her DLI. The ALJ determined a detailed discussion of medical records after her DLI is not appropriate, and this Court agrees. When determining eligibility for DIB "evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004).[4]

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

---

4. The relevance of this additional evidence is discussed more in depth below.

**STANDARD FOR DISABILITY**

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can claimant perform past relevant work?

5. Can claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The Commissioner considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff asserts the Commissioner's decision should be reversed because it is not supported by the substantial weight of the evidence, or in the alternative, remanded[5] for further consideration. (Doc. 14, at 1-2). Specifically, Plaintiff argues the ALJ erred in his determination of Plaintiff's RFC by failing to adequately account for (1) Plaintiff's pain; (2) medical evidence dated after Plaintiff's DLI; and (3) application of the Medical-Vocational Guidelines. (Doc. 14, at 14).

*Pain and Plaintiff's Credibility*

Plaintiff argues the Commissioner erred by failing to adequately account for her complaints of pain which either independently or in combination with her other impairments rendered her disabled. (Doc. 14, at 16). She correctly asserts that, in some instances, pain alone may support a claim of disability. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Pain symptoms, however, can be difficult to quantify, so the determination often turns to Plaintiff's credibility. *Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004); *See also* SSR 82-58, 1982 WL 31378, *1 ("Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify."). An ALJ may take Plaintiff's credibility into account when making a determination regarding the severity of her pain complaints. *Hickey-Haynes*, 116 F. App'x at 726-27. In order to make a determination regarding a claimant's credibility an ALJ considers the following factors:

(i) [A claimant's] daily activities;

---

5. Plaintiff correctly asserts that remand is not proper unless a plaintiff shows good cause for failing to incorporate new and material evidence. (Doc. 14, at 2; 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). However, Plaintiff fails to elaborate at all, and therefore, fails to meet her burden under the sentence six remand, so the Court will not consider this argument.

> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. Here, the ALJ reviewed Plaintiff's complaints of weakness, numbness, and fatigue, and ultimately determined Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms. (Tr. 14-15). However, he also determined "the allegations concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the evidence as a whole, persuasive or credible to the extent they are inconsistent with this [RFC] finding." (Tr. 14-15).

The ALJ's credibility determination is afforded great weight by the reviewing court. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). In fact, this Court's review is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. Additionally, the Court may not "try the case de novo, nor resolve conflicts in evidence . . . ." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, in determining the credibility of Plaintiff's pain complaints, the ALJ reviewed the medical records, a pain questionnaire, and Plaintiff's testimony at the hearing. (Tr. 14-15). He found some of the symptoms, including weakness and fatigue, of which Plaintiff complained in the questionnaire and during her testimony, were not fully consistent with the medical evidence. (Tr. 17). The Court finds there is substantial evidence in the record to support this determination. There are not significant complaints of weakness and fatigue in the record during the proscribed period. The ALJ, moreover, found the record revealed Plaintiff's pain and symptoms were not exacerbated until more than a year after her DLI. (Tr. 17). The record supports this conclusion. After a review of the entire record, the Court finds that the ALJ did have substantial evidence to support his credibility determination.

### *Relevance of Evidence after DLI*

Plaintiff argues medical evidence dated after her DLI is pertinent to the extent it reveals the continuity and severity of impairments that existed before the DLI. (Doc. 14, at 14). Eligibility for DIB, however, must be established during the relevant time period; thus, the medical evidence submitted after the DLI is of minimal relevance to determining disability during the relevant time period. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *see also Strong*, 88 F. App'x at 845.

Plaintiff alleges this case involves misdiagnosis. (Tr. 31). She argues she suffered from CIDP before the alleged onset date, but was not diagnosed with this condition until much later. (Doc. 14, at 15). Accordingly, she asks this Court to give greater weight to medical evidence dated after the DLI. Even though Plaintiff's diagnosis came *after* her DLI, she must still show her symptoms, regardless of the diagnosis, were severe enough to establish disability *before* her DLI. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is

determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") Plaintiff, through counsel, noted this condition is "characterized by a history weakness, numbness, tingling, pain, difficulty walking, burning pain in the extremities, onset of back or neck pain radiating down the extremities usually diagnosed as radiculopathy." (Tr. 31).

While medical evidence after the DLI was not discussed in detail in the ALJ's opinion, he did review and consider this evidence. (Tr. 17). He determined the records immediately after the DLI did not contain evidence of significant worsening that could reasonably relate back to the prescribed period. (Tr. 17). The ALJ found, therefore, the record did not support a finding of CIDP as a severe impairment through the Plaintiff's DLI. (Tr. 13). Plaintiff did briefly complain of tingling in her fingers in January 2006 (Tr. 395) and radiculopathy (Tr. 320, 389, 420, 454), but, overall, the record reveals substantial evidence supporting the ALJ's determination. Additionally, Plaintiff frequently had a positive response to treatment and medication. (Tr. 333, 332, 394, 395, 396, 399, 419, 420). A detailed review of the medical records after the Plaintiff's DLI, therefore, is not warranted or necessary.

*Application of the Medical-Vocational Guidelines*

Plaintiff also argues the ALJ erred in not utilizing the Medical-Vocational Guideline 201.10. (Doc. 14, at 14-15). An ALJ may find a disability by applying the guidelines, also known as the "grids". The grids dictate a finding of "disabled" or "not disabled" based on a claimant's exertional limitations, age, education, and prior work experience. *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981). The grids eliminate the need for calling a VE to the hearing. *Hurt v. Sec'y of Health and Human Servs.*, 816 F.2d 1141, 1143 (6th Cir. 1987).

As an initial matter, Plaintiff identified grid 201.10 as descriptive of her condition. (Doc. 14, at 14-15; Doc. 17, at 4). However, 201.10 specifically refers to a claimant with a "limited or less" education. 20 C.F.R. § Pt. 404, Subpt. P, App. 2. Plaintiff has an associate's degree and does not qualify under this section. (Tr. 286). Additionally, and more importantly, an ALJ can only apply the grids if it is determined a claimant cannot perform her past relevant work. *Cole*, 820 F.2d at 771. That is not the case here. After hearing testimony from the VE, the ALJ determined Plaintiff could perform two of her past jobs, albeit at a lower exertional level. (Tr. 18).

A claimant's RFC is essentially "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ is required to consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. The determination of a claimant's RFC is reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5.

The record reveals substantial evidence supporting the ALJ's finding regarding Plaintiff's RFC. The record shows Plaintiff often responded well to treatment. During the relevant disability period she often had greatly reduced pain with steroid injections, including a six month period of pain reduction, and improved sleep with the use of a TENS unit. (Tr. 38, 333, 332, 394, 395, 396, 399, 419, 420). The record reveals an ability to perform activities of daily living, including household chores, driving, and traveling. (Tr. 37-38, 334, 396). In conclusion, there is substantial evidence in the record to support the ALJ's determination in regard to Plaintiff's RFC.

**CONCLUSION**

Following a review of the arguments presented, the record, and the applicable law, this Court finds the ALJ's decision is supported by substantial evidence and resulted from application of the correct legal standard. Therefore, the Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED.

s/James R. Knepp II<br>United States Magistrate Judge